UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALARIE HAMILTON,

       Plaintiff,                     CASE NO. 18-13458
                                        HON. DENISE PAGE HOOD

v.

EQUIFAX INFORMATION SERVICES, LLC ET AL

       Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS [#30; #35]

### I. BACKGROUND

**A. Procedural Background**

On September 26, 2018, Plaintiff Valarie Hamilton ("Hamilton") commenced this action in the 47th District Court in Oakland County, Michigan alleging Negligent and Willful Violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (Counts 1-10) against Defendants Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("Trans Union"), Synchrony Bank ("Synchrony"), Michigan First Credit Union ("Michigan First"), and Capital One Bank (USA), N.A ("Capital One"). (Doc # 2-2) Trans Union removed this action to federal court on November 5, 2018. (Doc # 1) Equifax was dismissed from this case on December 10, 2018.

1

(Doc # 18) Capital One was dismissed from this case on February 11, 2019. (Doc # 34) Synchrony Bank was dismissed from this case on February 26, 2019. (Doc # 37) Trans Union and Michigan First are the only remaining defendants in this action.

On January 16, 2019, Trans Union filed a Motion for Judgment on the Pleadings. (Doc # 30) Hamilton filed her Response on February 6, 2019. (Doc # 33) Trans Union filed its Reply on February 20, 2019. (Doc # 36)

On February 18, 2019, Michigan First filed a Motion for Judgment on the Pleadings. (Doc # 35) Hamilton filed her Response on March 11, 2019. (Doc # 40) Michigan First filed its Reply on March 15, 2019. (Doc # 42)

These two Motions are currently before the Court.

### B. Factual Background

On August 30, 2017, Hamilton filed Chapter 7 Bankruptcy in Bankruptcy Court in the Eastern District of Michigan. (Doc # 2-2, Pg ID 13) On December 5, 2017, the Bankruptcy Court issued Hamilton an Order of Discharge. (*Id.*) On May 23, 2018, Hamilton received her Trans Union credit disclosure and noticed that the Synchrony and Michigan First trade lines inaccurately failed to include the correct notation indicating her bankruptcy discharge. (*Id.*) According to Hamilton, the Synchrony and Michigan First Trade lines should be reported as closed and with the notation of "bankruptcy discharge." (*Id.*) Hamilton claims that the lack of this

notation will cause creditors to falsely believe that those two accounts are active when they are closed.  (*Id.*)

On or about July 7, 2018, Hamilton submitted a letter to Trans Union disputing the incorrect trade lines.  (*Id.*)  Hamilton asked Trans Union to correctly note her bankruptcy discharge.  (*Id.*)  Hamilton was led to believe that Trans Union forwarded her dispute to Synchrony and Michigan First.  (*Id.*)

After not receiving any information from Trans Union, Hamilton obtained additional credit disclosures from Trans Union on August 22, 2018.  (*Id.* at 14-15.)  Upon obtaining these credit disclosures, Hamilton realized that no changes were made since she initially gained access to her credit disclosures on May 23, 2018.  (*Id.* at 15.)

Hamilton contends that as a direct and proximate result of Defendants Trans Union and Michigan First's (collectively, "Defendants") negligent and/or willful failure to comply with the FCRA, she has suffered credit and emotional damages.  (*Id.*)  Hamilton also claims that she has experienced undue stress and anxiety due to Defendants' failure to correct the alleged errors.  (*Id.*)

## II. STANDARDS OF REVIEW

### A. *Rule 12(c)*

Federal Rule of Civil Procedure 12(c) authorizes parties to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Motions for judgement on the pleadings are analyzed under the same standard as motions to dismiss under Rule 12(b)(6). *See Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.*

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material

elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

When deciding a 12(c) motion for judgment on the pleadings, as a general rule, matters outside the pleadings may not be considered unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). The Court may, however, consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* at 89.

### B. *FCRA*

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Federal Sav. Bank,* 696 F.3d 611, 614 (6th Cir.2012) (quoting *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)). The FCRA imposes liability on both consumer reporting agencies and furnishers of information to those agencies for willful or negligent violations under the FCRA. *Nelski v. Trans Union, LLC,* 86 Fed.Appx. 840, 844 (6th Cir.2004). Section 1682s-2 of the FCRA bars "furnishers of information" "from spreading inaccurate consumer-credit information." *Boggio,* 696 F.3d at 614. To ensure compliance with this provision,

a furnisher must provide credit-reporting agencies with accurate information about consumers. *Id.* (citing 15 U.S.C. § 1681s–2). A credit-reporting agency also may forward consumer disputes to the furnisher and request that the furnisher respond accordingly. *Id.*

When a credit reporting agency forwards consumer disputes to the furnisher, the FCRA requires the furnisher to (1) conduct an investigation; (2) review any information provided by the consumer reporting agency; (3) report the results of the investigation to the consumer reporting agency; (4) report any inaccuracies to all consumer reporting agencies which may have received inaccurate information, and (5) correct any inaccuracies in the information it provides. 15 U.S.C. § 1681s–2(b). If the furnisher fails to comply with these requirements, such failure may give rise to a private cause of action. *See* 15 U.S.C. § 1681s–2(c)(2). If a furnisher concludes that its reporting is "inaccurate or incomplete or cannot be verified" after conducting the investigation, it must correct the information by:

> (1) modify[ing] that item of information;
> (2) delet[ing] that item of information; or
> (3) permanently block[ing] the reporting of that item of information.

15 U.S.C. § 1681s–2(b)(1)(E).

The Sixth Circuit has held that reporting is accurate for purposes of the FCRA as long as it is technically accurate, or accurate on its face, stating:

> [A] plaintiff has failed to carry his initial burden if a court finds that the information contained in a challenged credit report was accurate on its

> face, or put somewhat differently, "technically accurate." That is, a credit reporting agency satisfies its duty under section 607(b) if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect.

*Dickens v. Trans Union Corp.,* 18 Fed.Appx. 315, 318 (6th Cir.2001) (quoting *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991)). A consumer's conclusory allegation that a report is misleading is insufficient to meet this standard delineated by the Sixth Circuit. *See, e.g., Elsady v. Rapid Global Business Solutions, Inc.,* 2010 WL 2740154 (E.D.Mich.2010) ("at a minimum, a plaintiff must provide that a creditor or consumer of credit reports would be [misled]. When the recipient was not [misled], such a showing will be extremely difficult."). The standard, and the definition of accuracy, remains the same in cases involving both credit reporting agencies and furnishers of information. *Id.* at *7 ("[T]here is no reason to define accuracy differently for consumer reporting agencies and furnishers. The purpose of [the] FCRA is to protect consumers by ensuring accurate reporting of information and the commitment to accuracy should apply equally to all entities involved in the reporting process."). *Id.*

### III. TRANS UNION'S MOTION FOR JUDGMENT ON THE PLEADINGS

Trans Union makes several arguments as to why Hamilton should not succeed with her claims. First, Trans Union contends that it did not fail to comply with the FCRA by referring to Plaintiff's Chapter 7 Bankruptcy as "discharged" and deeming her Synchrony and Michigan First accounts as "included in the bankruptcy." In

support of its argument, Trans Union relies on a class-action settlement agreement that was approved in the Central District of California—*White v. Experian Info. Sols., Inc.*, Case No. 8:05-cv-0170-DOC-MLG (C.D. Cal. Aug. 19, 2008) ("White Approval Order"). In the White Approval Order, the court held that when a consumer reporting agency uses the term "included in bankruptcy" to demonstrate that an account is discharged, that conclusively signifies that such reporting complies with the requirements of the FCRA. Trans Unions asks the Court to find that as the court did in *White*, its use of the term "included in bankruptcy" was in compliance with the FCRA.

Alternatively, Trans Union argues that even if its use of the phrase "included in bankruptcy" was insufficient according to Hamilton, Hamilton has not shown that Trans Union's reporting was *inaccurate*. Trans Union claims that courts have held that credit reporting information is accurate under the FCRA if it is "technically accurate" or "accurate on its face," even if the information is misleading or incomplete. Trans Union contends that its reporting that Hamilton's Chapter 7 bankruptcy was discharged, and that her Synchrony and Michigan First accounts were "included in bankruptcy," were *accurate* under the FCRA.

In response, Hamilton first asserts that the Court should not consider the credit disclosures (Doc # 30-1; Doc # 30-2) that Trans Union filed along with its Motion because she does not refer to them in her Complaint. Hamilton claims that the Trans

8

Union credit disclosures that were filed with its Motion were dated May 21, 2018 and August 6, 2018, but the credit disclosures that Hamilton refers to in her Complaint were dated May 23, 2018 and August 22, 2018.

Next, Hamilton asserts that *White* is inapposite because it involved a class action settlement, and is nevertheless, not controlling authority. Hamilton further argues that regardless of *White*, Trans Union's reporting of her bankruptcy was inaccurate and/or misleading in violation of the FCRA and contrary to Sixth Circuit case law. Hamilton claims that there is a difference between reporting that an account is "included in bankruptcy" as opposed to reporting that an account has been "discharged in bankruptcy." Hamilton contends that the former suggests that a bankruptcy is pending and that no discharge has been granted. Conversely, Hamilton claims that the latter demonstrates that a discharge transpired.

First, the Court *will* take the credit disclosures offered by Trans Union into consideration because they *are* referred to in Hamilton's Complaint. Hamilton's only argument as to why the Court should not consider Trans Union's credit disclosures is that their dates do not perfectly align with the dates of the disclosures that Hamilton refers to in her Complaint. Hamilton's argument is flawed. Regardless of when Hamilton received the credit disclosures, Trans Union's credit disclosures are the exact documents that Hamilton references in her Complaint, and Hamilton does not dispute this fact. Since Hamilton undoubtedly references the

aforementioned credit disclosures, the Court will consider those documents, and the Court's consideration of these disclosures will not convert the instant Motion into a motion for summary judgment. *See Weiner* F.3d at 88.

Second, the Court finds that Trans Union's reporting of Hamilton's Synchrony and Michigan First accounts does not violate her rights under the FCRA. Hamilton has not demonstrated that Trans Union's reporting is misleading. As courts have held, it is not enough for a plaintiff to personally assert that a credit report is misleading, and mere speculation that a notation is misleading is insufficient to support a claim of inaccuracy under the FCRA. *See Dickens*, 18 F. App'x at 318; *Elsady*, 2010 WL 2740154, at *7. Hamilton's argument is based on her personal belief that a creditor *could* be misled by Trans Union's reporting. However, her assumption is insufficient for purposes of finding a violation of the FCRA. *See Elsady*, 2010 WL 2740154, at *7 (finding that plaintiffs must demonstrate that a creditor has been misled in order for a determination that their FCRA rights have been violated).

Lastly, in regard to the accuracy of the credit disclosures, the Court finds that Trans Union's reporting was accurate. As the court noted in *Dickens*, credit reporting is accurate so long as it is "technically accurate." *See Dickens*, 18 F. App'x at 318. While the FCRA does not define "accuracy," the Federal Trade Commission has defined this term for consumer credit reporting:

> Accuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly:
>
> (1) Reflects the terms of and liability for the account or other relationship;
>
> (2) Reflects the consumer's performance and other conduct with respect to the account or other relationship; and
>
> (3) Identifies the appropriate consumer.

12 C.F.R. § 41.41(a); *Groff v. Wells Fargo Home Mortg., Inc.*, 108 F. Supp. 3d 537, 540 (E.D. Mich. 2015). Here, Trans Union's credit disclosures both indicate that Hamilton's Synchrony and Michigan First accounts have no account or past due balances and note that her Chapter 7 Bankruptcy is "discharged." (Doc # 30-1; Doc # 30-2) Further, Trans Union's credit disclosures state that Hamilton's Synchrony and Michigan First accounts are "included in bankruptcy." The Court is satisfied that Trans Union's credit disclosures are *technically accurate* since they are accurate on their face and reveal that Hamilton's Synchrony and Michigan First accounts have been discharged.

**IV. MICHIGAN FIRST'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Michigan First similarly contends that Hamilton cannot succeed with her FCRA claims because her credit disclosures are accurate. Michigan First argues that there is nothing misleading or inaccurate about Hamilton's credit disclosures

according to Sixth Circuit case law. For the reasons stated above, the Court agrees with Michigan First.

V. **CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Trans Union, LLC's Motion for Judgment on the Pleadings (Doc # 30) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant Michigan First Credit Union's Motion for Judgment on the Pleadings (Doc # 35) is **GRANTED**.

DATED: August 16, 2019

<u>s/Denise Page Hood</u>
DENISE PAGE HOOD
Chief Judge